08-2828-pr
McKinnon v. Superintendent, Great Meadow Correctional Facility

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.  IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)."  UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT http://www.ca2.uscourts.gov/), THE PARTY CITING THE SUMMARY ORDER MUST FILE AND SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED. IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of November, two thousand nine.

PRESENT: BARRINGTON D. PARKER,
PETER W. HALL,
GERARD E. LYNCH,
     *Circuit Judges.*

_____

Dyvon McKinnon,

        *Petitioner-Appellant*,

   v.             No. 08-2828-pr

Superintendent, Great Meadow Correctional Facility,

        *Respondent-Appellee.*

_____

For Appellant:    ELEANOR JACKSON PIEL, Law Office of Eleanor Jackson Piel, New York, New York.

For Appellees:    LISA E. FLEISCHMANN, Assistant Attorney General, for Andrew M. Cuomo, Attorney General of the State of New York, for Respondent-Appellee.

Appeal from a judgment of the United States District Court for the Northern District of New York (Singleton, *J.*), denying appellant's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Dyvon McKinnon was convicted after a jury trial in New York State Supreme Court, Onondaga County, of three counts of sodomy in the first degree (N.Y. Penal Law § 130.50(1), (4)), four counts of sexual abuse in the first degree (N.Y. Penal Law § 130.65(1)) and three counts of endangering the welfare of a child (N.Y. Penal Law § 260.10(1)). The Appellate Division, Fourth Department, unanimously affirmed McKinnon's conviction in February 2004. *People v. McKinnon*, 788 N.Y.S.2d 766 (App. Div. 2005). McKinnon sought leave to appeal to the New York Court of Appeals, which denied his application in May 2005. *People v. McKinnon*, 4 N.Y.3d 888 (2005) (Ciparick, Associate Judge*)*.

In May 2006 McKinnon, *pro se*, timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 in the district court. That court denied McKinnon's petition and declined to grant McKinnon a certificate of appealability ("COA"). *McKinnon v. Conway*, No. 9:06-cv-00717-JKS, 2008 WL 1945342 (N.D.N.Y. May 1, 2008) (mem.). McKinnon, *pro se*, filed a notice of appeal and moved this Court for a COA. On September 28, 2008, a panel of this Court granted an open-ended COA, and counsel was thereafter assigned to pursue the appeal.

We review *de novo* the district court's denial of McKinnon's petition for a writ of habeas corpus. *See, e.g.*, *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009); *Clark v. Perez*, 510 F.3d 382, 389 (2d Cir. 2008). Under 28 U.S.C. § 2254(d), however, a writ of habeas corpus may not issue for any claim adjudicated on the merits by a state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based

2

on an unreasonable determination of the facts in light of the evidence presented" in state court, *id*. § 2254(d)(2). Our *de novo* review is further restricted by certain limiting principles. *Acosta*, 575 F.3d at 184. Notably, we will not consider claims that have not been exhausted by fair presentation to the state courts, *see* 28 U.S.C. § 2254(b)(1), *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases), unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Acosta*, 575 F.3d at 184 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Applying these principles to this case, we conclude, as did the district court, that McKinnon is not entitled to habeas relief.

McKinnon appeals on the following grounds from the district court's denial of habeas relief: (1) the state trial court erroneously denied McKinnon's motion to sever for trial the counts relating to the two separate attacks; (2) the trial court erroneously admitted into evidence a knife, a police officer's testimony, and evidence regarding pretrial identification procedures relating to the first attack; and (3) the verdict was against the weight of the evidence.[1]

McKinnon's claim for habeas relief based on the trial court's denial of his motion to sever the trial of various counts against him is without merit. Improper joinder of charges against

---

[1] McKinnon also argues here for the first time that the cumulative effect of the above-claimed errors entitles him to habeas relief from this Court. This claim is procedurally barred. *See Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006) (denying habeas relief where claim of cumulative error was not fairly presented to state courts), *cert. denied sub nom Jimenez v. Graham*, 549 U.S. 1133 (2007). The argument was not put before the Appellate Division, the New York Court of Appeals, or the district court. It cannot be put before this Court for the first time now. In any event, the cumulation of McKinnon's claims, each of which is without merit, does not lead us to find that his trial was constitutionally unfair.

a defendant does not, in itself, amount to a constitutional violation. *See United States v. Lane*, 474 U.S. 438, 446 n.8 (1986) (stating that erroneous joinder violates the constitution "only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."); *see also Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) ("Joinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process.") (internal quotation marks omitted). Where the jury learns of multiple crimes alleged to have been committed by a defendant, "[t]he defendants' interests are protected by limiting instructions . . .." *Spencer v. Texas*, 385 U.S. 554, 561 (1967).

McKinnon argues that the introduction of evidence of two different crimes in the same trial prejudiced him in the eyes of the jury and "well could have . . . persuaded the jury to find petitioner guilty of all the charges." In analyzing this claim, the Appellate Division noted, however, that there was "no substantial difference in the quantum of proof presented with respect to the separate [attacks]" and that McKinnon did not claim that he "had important testimony to offer" in his defense regarding one attack but had a "genuine need to refrain from testifying regarding the [other attack] . . .." *McKinnon*, 788 N.Y.S.2d at 766. The court also noted that the trial court's curative instruction to the effect that the jury is required to analyze the evidence applicable to each charged crime separately and return a verdict on each crime based on the evidence applicable to that crime limited the possibility of prejudice. *Id*. Based upon our review of the record, we cannot say that the Appellate Division's decision with respect to the severance of claims was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1).

4

McKinnon also challenges the admission into evidence of a knife and certain police testimony. Those challenges fail for the reasons that follow. Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law,[2] do not present constitutional issues cognizable under federal habeas review. *See Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts")). Therefore, unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context. *See DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (per curiam) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")); *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)) (holding that introduction of improper evidence does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."). Such unfairness will only result where:

> [T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly significant.

*Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted).

---

[2] Although the district court reviewed these claims *de novo*, because the Appellate Division's review on direct appeal was a disposition of the arguments on the merits, *see Jimenez*, 458 F.3d at 133, 139-40, we apply "the deferential standard of review established by [28 U.S.C. § 2254(d)] . . .." *Wilson v. Mazzuca*, 570 F.3d 490, 499 (2d Cir. 2009) (internal citation and quotation marks omitted).

On the record before us, we do not find that the admission of either the knife or the police officer's testimony, even if error, rises to the standard set forth in *Collins*. With respect to the knife, we note that McKinnon was acquitted of the substantive weapons-possession charge for which that evidence was admitted. We cannot conclude, therefore, that admission of the knife in evidence resulted in fundamental unfairness and the deprivation of McKinnon's right to a fair trial. Regarding the police testimony that, in the testifying officer's experience, children tend to overestimate suspects' heights and ages, the record as a whole demonstrates that it was largely cumulative because other evidence not challenged by McKinnon proved that McKinnon was the attacker, and McKinnon cannot demonstrate that the testimony had a substantial and injurious effect on the verdict. *See Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Positive DNA evidence linked him to the very attack with respect to which identification witnesses' testimony was arguably bolstered by the police officer's testimony. Also, during voir dire and again in the charge to the jury, the trial court limited the possibility of prejudice by instructing the jury that they should determine the credibility of police witnesses in the same manner as they would with respect to other witnesses and that police officers' testimony is not entitled to any greater weight or "believeability" by virtue of the witness's status as a police officer. *See McKinnon*, 2008 WL 1945342, at *6. Thus, in light of the record and the limited nature of the challenged testimony, we cannot say that admission of the officer's testimony was so unfairly prejudicial as to affect the fundamental fairness of the trial. *See Estelle,* 502 U.S. at 67-68, 73-75; *DiGuglielmo*, 366 F.3d at 137. Since any error that may have occurred does not rise to constitutional dimensions, it is not cognizable under federal habeas review. *See Crane*, 476 U.S. at 689; *Hawkins*, 460 F.3d at 244.

As a fourth ground for habeas relief McKinnon challenges the use at trial of pretrial identifications in which witnesses identified him as the perpetrator of the first attack. He argues that his identification shortly after the first attack occurred and his subsequent identification in a photo array were so unduly suggestive as to violate due process. That challenge is without merit. As recently articulated by this Court, "[w]hile a showup procedure is inherently suggestive . . . and has accordingly been widely condemned, a claimed violation of due process in the conduct of a confrontation depends on the totality of the circumstances . . .." *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987)) (internal citation and quotation marks omitted). It is clearly established federal law that an identification procedure may be unduly or unnecessarily suggestive if it created "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Brisco*, 565 F.3d at 88 (quoting *Stovall*, 388 U.S. at 302) ("[A] showup identification violates due process only if it is an '*unnecessarily* suggestive' procedure."). Identification evidence is admissible if the pretrial identification procedure was not unnecessarily suggestive or if the identification is independently reliable. *Brisco*, 565 F.3d at 88 (citing *Raheem v. Kelly*, 257 F.3d 122, 133-34 (2d Cir. 2001)). Moreover, "[e]xigent circumstances generally weigh in favor of concluding that a showup identification procedure was not unnecessarily suggestive, because a showup procedure may be necessary . . . to quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." *Brisco*, 565 F.3d at 88.

Here, the challenged showup identification occurred within minutes of the attack after the police took the two victims of the first attack, separately, to the area *identified by one of the*

7

*victims* as the location where he had previously seen his attacker. *C.f. Brisco*, 565 F.3d at 88-89. That victim identified McKinnon's house, which prompted the police officer at the scene to ask McKinnon to stand outside for identification. This identification was prompted by the victim, not by any suggestion from the police. Moreover, the victims, both of whom were adolescents, were uncertain of their identifications at first—a fact that was fully explored on cross examination at trial. Several hours after the showup, the victims, separately, were shown a photo lineup containing five pictures including McKinnon's. Both of them identified McKinnon as the attacker from the photo array, though one of them stated that he was only 65% certain of his identification from the photo array. At trial the court instructed the jury with respect to the nature of the identifications, telling them to consider carefully a host of factors including the circumstances of the identifications and whether the identifications were free of suggestion. Successive identification procedures are not per se unduly suggestive, even where the accused is the only common denominator among them. *See United States v. Concepcion*, 983 F.2d 369, 379 (2d Cir. 1992) (finding that placement of a suspect's picture in a second photo array after a witness failed to select anyone from the first array does not make the second array unduly suggestive or create a substantial likelihood of misidentification). Finally, in light of the positive DNA match also linking McKinnon to the first attack, McKinnon fails to demonstrate that the challenged identification procedures were so unreliable as to have affected the fundamental fairness of the trial, *Simmons*, 390 U.S. at 384; *Brisco*, 565 F.3d at 88, or to have had a substantial and injurious effect on the verdict. *See Fry*, 551 U.S. at 116.

McKinnon also argues that the verdict was against the weight of the evidence. The district court addressed this claim on the merits, and we do not disagree with that court's

8

analysis. We note, however, that a federal court must first consider whether a habeas petitioner has adequately exhausted state remedies by fairly presenting both the factual and legal premises for his federal claim to the appropriate state courts. *See* 28 U.S.C. § 2254(b)(1); *Baldwin*, 541 U.S. at 29. Because McKinnon failed to raise this claim before the New York Court of Appeals, it was not preserved for review by the federal courts. *See O'Sullivan*, 526 U.S. at 845; *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (holding that merely including an appellate brief with a leave application that discussed some but not all of the claims addressed in that brief is insufficient to inform the New York Court of Appeals that leave is being sought with respect to claims other than those mentioned in the letter seeking leave to appeal to the Court of Appeals)). McKinnon offers no argument to demonstrate either cause for failure to have raised the argument and resulting prejudice from violation of federal law, nor that a miscarriage of justice will result if we do not consider this claim. *See Coleman*, 501 U.S. at 750. Additionally, the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, *see, e.g.*, *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001), *Douglas v. Portuondo*, 232 F.Supp. 2d 106, 116 (S.D.N.Y. 2002); *see also Estelle,* 502 U.S. at 67-68, and as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007).

## CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____